In the year 2015, this Court decided a case involving the CMI against Chicago Bank Corp. We issued several rulings in the course of that opinion, which appears in K08-Feb. 3. But we feel dictate the outcome of this case. The very same agreement is involved here. The Court held that the agreement requires the correspondent, that is, the originating bank, in this case, Equity, to cure or repurchase any loan that the CMI, in its sole and absolute discretion, determines is non-conforming. Following an earlier opinion from 2013 in the residential funding case, the Court held that the central purpose of this agreement is to shift the burden of the lost and defective loans to the originating bank, the correspondent bank, and not to CMI. The selling party is to bear the burden of the loss of these loans. The parties agreed that CMI's damages would be calculated under the repurchase price formula in the agreement. In Chicago Bank Corp., several of those loans have been foreclosed. And the District Court applied the repurchase price formula, nonetheless, giving credit to the correspondent bank for the proceeds of the collateral sale. Now, your client sold or transferred these to Fannie and Freddie, who did the foreclosing, and then came back to CMI for its losses. That's right. What I would have thought would be called a deficiency, but there's a reference in the bank that you were required to purchase, repurchase the foreclosed loans. And why is the repurchase price just what would have been sought in a deficiency action, or is it independent of that? There's five components to the repurchase price formula in the manual. Okay, but how could—all right. If it's greater than your loss as determined by the resolution of F&F's claim back after foreclosure, how can your client get a windfall like that? Well, it's not a windfall. These are costs that were actually incurred. The principal, the interest, fees, and expenses, including the cost of foreclosure, which is right in the formula. This is what they agreed to. The court in Chicago Bank Corp. said this is what the parties agreed would be the measure of damages for defaulted loans or loans that went into bankruptcy or not. Counsel, isn't it possible for there to be foreclosure expenses where the loan still exists and has not been fully liquidated? Well, conceivably, but that's what one of the judges said, but that's a stretch, I believe. I mean, foreclosure expenses usually have to do with foreclosures, and in this case, it was specifically allowed in the agreement that equity agreed to that those costs would be recovered. And so in the Chicago Bank Corp., where there were foreclosed loans, this court held, nonetheless, that the repurchase price formula was an appropriate measure of damages, notwithstanding the foreclosure. What about the fact that I didn't see anything in the repurchase price formula about foreclosure proceeds? It talks about foreclosure expenses but not proceeds. What's the relevance of that? Well, the proceeds would be credited against the amount due, and in this case, the bank, Equity Bank, profited to the extent of $1.2 million because of the foreclosure and the allocation of proceeds against the formula. I realize that, operationally, that's what would end up happening. I just didn't see any reference to it in the agreement. Is it mentioned in the agreement? No, I don't believe so. It's just a matter of equity. If you do go through foreclosure, we have always given credit to the corresponding bank. And why isn't that a problem? I mean, you're talking about two sophisticated parties, a comprehensive agreement, where the repurchase price is set out really in excruciating detail with five separate components, and the one component that's not in there, from what I can tell, is foreclosure proceeds. That's true, but that's just a matter of common sense. If, in fact, it goes to foreclosure, we're going to give them credit for what we cover. And we did that and saved them $1.2 million, and they're still complaining. The other holding of Chicago Bank Corp that's relevant is the trial court's conclusion that Bank Corp had breached the contract by refusing to procure or repurchase was affirmed. So that bears on the second issue, which I'll get to in a moment. In this case, contrary to Chicago Bank Corp, we made unanimous decisions of the district court in the Eastern District of Missouri, which has dealt with a number of these cases. And five or six cases cited in pages 20 and 21 of our brief from around the country. Courts faced with this very issue have said it's appropriate to use the repurchase price formula to calculate damages in the case of a foreclosure. Otherwise, as the resolution trust case said in the First Circuit, you're conferring a huge windfall on the very party that caused the loss, the originating bank, which took a loan, which was defected. And all the parties contemplated, as you said, and Chicago Bank Corp said, that the risk of that loss would be on the originating bank. Nonetheless, in the case of foreclosure, which was done to salvage the collateral, the best value for the collateral, in that case, these people say they should go scot-free and not pay anything. Well, that's just contrary to common sense, to equity, and to the purpose of the contract to put the burden on the originating bank. What about the magistrate judge's point? And she seemed to rely on this. Let me just get to it, which is that she seems to say that, look, it talks about repurchasing loans, and you can't repurchase something that no longer exists. If there's no collateral, if the collateral has been sold and the loan essentially paid off by one of the parties, you can't repurchase something that no longer exists. What's your response to that reasoning? What the contract says is that CMI can request that if the correspondent is unable to correct or cure within the prescribed time, the correspondent shall, at CMI's sole discretion, either repurchase such defective loan from CMI at the price required by CMI per in repurchase price. So it specifically authorizes in the discretion of CMI to request that the damages be satisfied by use of the repurchase. Yeah, but you can't cure it. I mean, I don't know if that answers the question because you can't cure something that no longer exists. So if you make the demand and they don't cure, you can't cure it once it's been sold. Well, the maxim that overrides this whole issue, I think, is that if specific performance is unavailable, and they argue that it is, then the court must grant damages. Missouri law is clear on that. We've cited at least two cases in our brief, including one case where the trial court was reversed for not granting damages when specific performance was no longer available. I mean, you have to look at the equities of the situation. That goes to the biggest question I have about this case, and it's the selection of remedies. You state in your brief that CMI is the master of its own lawsuit, and I agree with that. But you then go on to say that you chose to pursue the repurchase of the loans. It seems to me there are other remedies and other provisions of the agreement allowing indemnification or remedies related to breach of warranties. You chose repurchase. The loans don't exist anymore. Why didn't you choose other remedies? We chose failure to cure or repurchase. And we used the repurchase price formula to calculate what we were out as a result of these defective loans and their failure to repurchase them. That's the breach in this case. We said here's the problem, cure or repurchase, and they said no. Isn't it true that the loans no longer existed at the time of the request for repurchase? Well, you know, the loans still existed, especially to the extent that there was a deficiency, which the originating bank could go after on assignment from us. So it's true that the security was liquidated, but the loans themselves, I don't think you can say didn't exist, especially if they were underwater, which they almost always were. Why not plead, to follow on with Judge Graza's point, why not plead in the alternative? Why not plead, look, we think this is a repurchase case and this is the breach, but even if it's not a repurchase case, we're going to claim damages under the other remedies clause in the contract. Well, I think that's in effect what we did because we're using this clause to measure damages, which Judge Perry in the Eastern District in the Chicago Bank Court said that's the deal that the correspondent made, that that was going to be the measure, and whether or not the security or the loan still exists, that's how it should be valued, and especially when the repurchase price formula includes a reference to foreclosure expenses. Clearly, in a situation like this where you're dealing with thousands of commercial residential loans, you're going to have some deadbeats. You're going to have some foreclosures. Clearly, sophisticated parties like they would anticipate that some of these loans would go bad. So you disagree. Just to get back, the magistrate judge, because she mentions this several times, the other remedies clause. Well, they could have proceeded under the other remedies clause, and I think the implication of that, according to her order, is she didn't believe that you had raised the other remedies clause, or she didn't believe it was part of the case. You disagree with that. Yeah, we do. We always, from the beginning, based our damage calculations on the repurchase price, which is another way of calculating damages. Bear in mind here, in addition to the $1.2 million that we recovered and credited against them, if we had not foreclosed here, what would we be looking at? We'd be looking at a claim for failure to mitigate. So they're trying to get us either way. They pleaded failure to mitigate. So if you don't do that, then you're on the risk of not recovering because you let the collateral slide too long. What was the amount of time between the time when CMI knew that the loans were defective and it made its demand for repurchase? There was some time lapse, because all of these defects were discovered by Fannie Mae or Freddie Mac, and then they make a determination. They kick it back to CMI. CMI notifies the correspondent to come in and explain this or fix it, and then when they don't, then they send them a couple of letters. We're administering half a million loans at a given time, so it takes a while, but there's nothing about it that's untoward. It's just a matter of having to get the job done. So I go back to the Missouri law that says assuming that specific performances are available, nonetheless should grant damages. And in all the courts that we cite in our briefings, using the formula for repurchase to do that is perfectly appropriate, and that's what the party is bargaining for. On the cross-appeal by equity, it's based primarily on the statute of limitations. They say that the damage was done when the loans were sold to us, and the five-year statute of the Missouri law began to run at that time. That's not the case that was filed. In our view, even if there was a defect in the loans at the time they were sold to us, which we didn't know because we had no obligation to scrutinize them, and a lot of the defects wouldn't have been available or discoverable anyway until sometime later when the loans went into default. How about discovery of the defects, I guess, based upon notice from Fannie or Freddie? Was that more or less than five years before the demand to repurchase? In some cases, yes. But the problem is we don't have a cause of action. We don't have the cause of action that we filed upon the mere discovery of the defect. The question is, did you have another remedy's cause of action? It seems to me that a typical statute of limitations analysis doesn't turn on what claim you asserted. It's whether you made a claim that was available. I don't think the claim was available because they would take the position that until they were given the chance to repurchase or cure that defect, we don't have a cause of action. As a matter of fact, that's the platinum case that's presently pending before another panel of this court. There they took the position that if you don't give perfect notice and opportunity to cure, then you have no cause of action. Our view is, and I think it's right, that until they have that opportunity, and we have five or six cases cited in our brief, to cure or repurchase, we don't have a cause of action. We can't file suit. It would be premature. It would be dismissible. Therefore, this case was always brought under Section 11 of the contract, not under Section 2, which dealt with representations and warranties. This was a claim for failure to cure or repurchase, simply. And that, all those claims were filed within five years of equity's failure to cure or repurchase. And therefore, the statute of limitations argument, I think, has no legs. I'd like to reserve the rest of my time. Thank you. Mr. Martin? May it please the Court, Your Honor. Thomas Martin, Lewis Rice, appearing on behalf of Equity Bank. Your Honors, for purposes of my oral arguments, I'm going to focus on two things, two key points. One is the statute of limitations, and then the second one is the timeliness of demand. But I certainly want to answer any other questions that the Court may have, not only on those questions but also on questions related to the loan loss litigation and the defect of notice as well. I think that probably the starting point for us is to clarify what exactly Equity Bank is not arguing before this Court with regards to the statute of limitations. We are not arguing before the Court that CMI's statute of limitations began to run on the day that Equity Bank transferred these loans to CMI, nor are we arguing that CMI had some obligation or some duty to flyspeck the loans when the loans were sold. Rather, our position is that the Missouri five-year statute of limitations began to run when CMI learned that it had the right to file suit, when it had a claim. And under Missouri law, that requires two things. It requires a breach of the contract, and the second thing it requires is damages, and those damages have to be capable of ascertainment, is what Missouri courts have said in the past. And capable of ascertainment is an objective standard under Missouri law. There's no breach until you've rejected an opportunity to cure. Actually, that's not the case, Your Honor. The breach occurred when the statute of limitations began to run in this particular case when CMI learned that it had purchased defective loans and its bargain for risk associated with those loans were greater than what it had paid. Counsel, how do you get around Chicago Bank Corp., where this court clearly held that the repurchase obligation was an independent contractual duty under Section 11 of the agreement? Yeah, so when you look, Judge Fleisig, in large part, relies on Chicago Bank Corp., and Judge Manson or Tropper rely on that as well. First of all, you've got to look at, with regards to both the residential funding and Chicago Bank Corp., it was not a statute of limitations case. It was not a statute of limitations. The statute of limitations wasn't even before the court there. All Chicago Bank Corp. and residential funding held in those particular cases is that to the extent that there is a provision in a contract that gives a purchaser, like CMI, the right to exercise discretion, the court's not going to substitute its judgment for that discretion. The court's not going to turn around and say, you know, we think that the loan is defective, even though CMI—or not defective, even though that CMI— If you're right on accrual, what's the remedy? What do we do? What's that? If we agree with you on accrual, what's the remedy? So I think the court can do two things with regards to the remedy. Number one, it can reverse and enter judgment in favor of Equity Bank. How could we do that? How can we know 12 dates? Yeah, I say that, Your Honor, because in the record, the factual record was never challenged by CMI. The factual record with regards to all of these cases, when the defects were accrued, when the timeliness of notice was made, never challenged—this was cross motions for summary judgment? I mean, let's get serious. Well, okay, so that's one remedy. Hear me out. But I will point to the court a couple of things that we try to facilitate that as well. Number one is, in our opening brief, we attached an appendix of a timeline on all 12 of the loans that specifically identified date and date and defect and defect. And then in our reply brief, Your Honor, Judge Loeb specifically, we put into the court two charts. And I would just say, take a look at that. The alternative. Well, you can't just put a date. I mean, when does the cause of action accrue? What's a defect? Oh, my gosh, the borrower hasn't paid the loan for three months. Does that trigger the statute of limitations if Fannie and Freddie didn't think so? Yeah, it potentially could under the reps and warranties. Well, let's have it. So we need a jury trial. We need 12 jury trials, right? Yeah. So the alternative, I offered you. The alternative is 12 jury trials. No, the alternative is simply to remand this case to the trial court for further instructions. But since the issue. Wait, wait, wait, wait. Okay, now you're writing my opinion. What do I say? So the issue with regards to when the facts arose and when the timeliness of demand, when they had notice of the defects, all of those issues were fully briefed to the trial court. And you can issue an instruction that says remand it. Wait a minute. Do we have depositions of the Fannie and Freddie loan administrators as to when they concluded that this was so bad that we have to hand them back to CMI? So actually, Your Honor. Do we? Yes or no question. We do not. All right. We do not because we tried to take depositions of Freddie and Fannie, but CMI joined the government's motion to prohibit that and the court granted that. Well, fine. So it sounds to me like you want us to issue an opinion that will undo that discovery denial. Well, we actually want you to issue. I don't see how you can ever determine defect as you're trying to define it without going to the person that was administering the loan. So the defects actually. How can you do that? The defects that are alleged in the repurchase demand and the defects that they cite in their statute aren't dependent upon Freddie and Fannie. That's just one. If you look at Section 11, there's five different things that accrue. We're talking accrual. I don't care if they're inherent in the loan. They may well be, some of them. Yeah. But you're talking accrual as a matter of notice. And that turns on, it seems to me, inevitably, when does the third party who took over administration come back to CMI and say these are garbage, take them back. But in the facts of the case, in many of those facts of the case, those were well in advance of the five-year statute of limitations. Yeah, but my question was remedy. Right. And I hear you cannot avoid the need, if you're right on the statute of limitations, of 12 jury trials. Well. I guess if you lose the other, at least on the six you lost already. And respectfully, under the agreement that the parties negotiated, that remedy to take away the accrual of the statute of limitations could have been put in there by CMI. They could have put provisions in there. That's irrelevant. Yeah. But unfortunately, in the case, we take the case as it's pled, is we're going to have to have a detailed fact review of these cases. Now, I would submit to the court that the summary judgment motions contained a voluminous detailed fact review of which those facts were never challenged by CMI with regards to that. CMI's argument to the trial court was basically the facts were irrelevant. Making a losing legal argument in summary judgment doesn't usually equal a concession of all the facts the other party has thrown out. Well, with regards to the facts, when they could have contested facts and created a factual issue, we certainly did. That's what trials are for. And, Your Honor, I guess the question that, I mean, the issue that ultimately that I would land on is to the extent that you have to determine accrual of the statute of limitations, and it's a fact-driven question, and you have to remand it back for a factual determination, then that's the status of the case. If the law is correct, which we think it is, we think the law in Missouri is absolutely clear that in this case, the five-year statute of limitations applies, and to the extent that that five-year statute, they had notice of defects and ascertainable damages well in advance of the five years, and they waited until February 2015 to file that suit, their claims are barred by the statute. Why aren't there two separate breaches here, each with its own statute of limitations? So there's certainly the breach on defective loans, the allegation that your client sent defective loans over. There's a separate breach then when they come in and say, you need to repurchase it or pay us damages, and equity refuses to do so. Aren't those separate breaches of the same contract? It's the same legal injury that arose. And you go back to the initial petition that they filed. What did they sue us on? Paragraph 29 of that petition said, we are filing a suit against you because you delivered defective loans and you failed to repurchase those loans. And then the rest of the petition goes on for the details of all the various defects of the facts, Your Honor. And then factually, when you look at why we were demanded to repurchase in the first place, it's exactly the same legal injury. The problem I'm having with that is you're basically saying that the first breach, after they had knowledge of the first breach, they should have sued within five years. But let's suppose that they did that. Let's suppose they did that. I think equity's argument would be this is premature because they could have asked us to repurchase it. In other words, city mortgage could still rely on the remedy that was available in the contract, so there would be no reason to sue. So there was nothing to responses to that. They could have filed a breach of contract under Section 2, or they had an indemnity provision under Section 10 that was possibly available for them. And what they – and that itself, what Missouri says is that when you're looking at the legal injury, and if it's the same legal injury, you go to the point in time when the cause of action was first available. They chose the remedy. Your best Supreme Court of Missouri case for that proposition? I'm sorry? You just stated – you just threw out a general principle of Missouri law regarding the same injury point and give me your best Supreme Court of Missouri case? Yeah. Let's see if I can put my finger on it. So there was the Silton v. Kansas City, which basically talked about when the accrual of the five-year statute of limitations runs. I'm looking to see – we cited several appellate court – oh, there's Jepson v. Stubbs. It's a Missouri en banc case that I think is applicable there in 1977. I'm looking at your table of authorities, and I haven't seen one yet that you mentioned. I think that was it. And then we also cite, Your Honor, a couple of other appellate court decisions. I know that typically the – I'm trying to avoid 28J letters. So you're re-rattling off case names, and I'm going down your table of authorities, and the case names aren't there. Are these cases that weren't cited? No, Your Honor. They should be there on our brief. I'm sorry. I got it. All right. I'm sure – no, it's my fault. I'm not keeping my papers straight here. Yep. Okay. Jepson. Yep. Okay. So – and then there's a plethora of cases, Your Honor, that we cite that are appellate court decisions. And as you know, we cite the authority that basically says that you can infer from the appellate court decision. I think also there was a County of Ohio case was another case that was a court decision that came in. I want to make sure, Judge, that I answered your question. Yeah. I mean, it just – it seems it's potentially precluding city mortgage from one of its remedies because – and it also – I'm a little concerned. I mean, by saying you have to sue immediately, even before the repurchase, I think that that's problematic because there's still a remedy in the contract itself, which presumably equity had not breached at that point or allegedly breached. So I think that that is potentially problematic. And so that's the point I'm making. If the injury is the same legal injury and they elect a repurchase remedy, then they still have to file that lawsuit within the same approval period. Whether they elected the repurchase remedy to buy back the loans, which is demand repurchase of buying back the loans, or they sought an indemnity remedy under Section 10, or they sought a general breach of contract remedy under Section 2. The remedy that they chose isn't dependent upon when the accrual of the statute of limitations is. The accrual of the statute of limitations is fairly well set out that if you have the breach and you're aware of the breach and you have ascertainable damages, then that's when your cause of action accrues. Of course, the question is what's the breach? The question is what's the breach? The way you just stated it. That's the Section 2 breach. It's the delivery of the defective loan. That's the Section 2 breach. Right. That would be the breach that would trigger the accrual of the cause of action. If they chose a repurchase remedy, they just have to do it within the same accrual period of the statute of limitations. But we said in Chicago Bank Corp that it's an independent contractual obligation in Section 11. Are you talking about Judge Fleisig's decision or the Eighth Circuit decision? I think you better move on if you're going to get to the issues as appellee. Okay. Let me just jump over to your time. You've repeated this one. I think we understand your position. I understand. Let me just talk about the timeliness of demand because that's an alternative way. And in a situation such as this where Section 11 is silent with regards to the option at the time, Missouri basically imputes a reasonable time under the circumstances upon which to make demand. So if you look at Section 11, Section 11 gives CMI the right to identify defects. If we can't cure those defects, then it has two options. It can demand repurchase, or the alternative thing that it can do is some other remedy, some other cure. And that other cure includes things such as refunding some of the purchase price and then indemnification. But Section 11 is silent as to when they have to make the appeal. And so what Missouri says – You know, you want to argue your cross appeal, and I'm far more troubled by whether you should prevail on the direct appeal and you're going to use up all your time without even talking about it. On my cross appeal, I guess you're under – I mean, you've thoroughly briefed the – whether reasonableness gets superimposed on a contract where it would be impractical to do so has been thoroughly briefed. Okay. I do have one question about that very quickly, which is does that conflict with the basic – and this goes to both of your first two-ish, and I want to give you a chance to move on. But does that conflict with the fact that essentially the contract says, look, CMI gets as long as they need to figure it out. And just because we don't have an obligation to look at it and review the loan when we first get it, we could take time. And just because we allowed the loan to go through and haven't exercised our rights doesn't mean that we can't later discover it and come back on equity. I think the position that we're taking with regards to both the timeliness of demand and the actual approval of the statute of limitations is those arise when they learn of the defects. I see. And when you look at the defects, they were all past five years. Judge Loebsack, I want to go back to you. I want to make sure – are you asking me to clarify our position on the loan liquidation? Yeah, of course. Okay. Of course. I want to cover and make sure that you want to cover. So with regards to the loan liquidation, I think what the trial court did was correct. I think the trial court just – Of course you do, but I think it's been put in substantial doubt. Well, so the trial court – For me at least. The trial court basically has indicated that CMI chose a repurchase remedy. And the repurchase policy – You're ignoring, and I didn't focus enough until this morning on the – Section 11 says cure or repurchase. Yeah. And if there's a refusal to cure, what's the remedy? And the argument is the remedy is, as determined by the contract, the repurchase price. Actually, it's not a repurchase. It's not a claim to repurchase. It's a claim for failure to cure in which the damages are measured by the repurchase price. What's wrong with that argument? So Section 11, a clarification, the repurchase price is one remedy. The other thing is for other cures, which include other things such as refunding part of the purchase price. That wasn't the way it was argued this morning. But with regards to the purchase price, the purchase price is a very specific definition, Your Honor, of – No, no, where's Section 11? I thought – I know it says it's a reference to other remedies, but doesn't it also say the notice is to cure or repurchase? Yeah, it says – And the demand is to cure or repurchase? Yes, it says, and, Your Honor, I'll quote it for you. CMI, sole discretion to either, one, repurchase such defective lung from CMI at a price required by CMI, the repurchase price, or, number two, agree to such other remedies, including but not – No, you're – well, you're not reading, I don't think, where Mr. Walsh is saying you should start. Correspondence will, upon notification, correct or cure such defect. Right, and if we fail to cure the defect – And the demand – I haven't read the wording, but if the demand was to cure or repurchase, and the response was, I refuse – So the first demand was to cure. We attempted to do that on several of the lungs. We failed to do that, and so then they made a final demand to repurchase. And then what the trial court held with regards to the lung liquidation is it could not be a breach if they had already, before they made demand on us, if they had already foreclosed on the property. You can't – I think one of the judges in the questions picked that out, that you can't buy back a loan that doesn't – Well, I know, but that's ignoring specific performance principles. Well, if they chose the repurchase remedy for a cause of action that didn't exist because – Yes, but that's the basic question. Did they choose that remedy, or were they choosing that as the manner of calculating the remedy for not curing? So they elected – they filed suit under a repurchase theory remedy, and they identified and they relied upon the repurchase price, which would be fine except in some cases, in the cases where they had these lungs, demand had not been made and the lungs had already been liquidated. You can't buy back something that doesn't exist. Okay. Can I ask one more question? You haven't responded to the point made this morning. That's fine. Neither did the magistrate judge. It's a variation on what Judge Loken was asking, but the other remedies point – I viewed this case when I came in as going down two – there were two lanes you could go down. One was repurchase, and one was the other remedies. That's how the magistrate judge set it out. And opposing counsel makes the point that we went under both lanes. In other words, we tried repurchase and we tried the other remedies route. What's your response to that? Because if they truly did go down both lanes, we have an entirely different case. No, their whole theory all along was failure to repurchase. Throughout the pleadings, throughout the summary judgment pleadings, it was the failure to repurchase. Counsel, isn't that because they were barred by the statute of limitations on all the other remedies? That's my take. I mean, I would think that that would be a reasonable conclusion that with regards to the remedies and their other things that that doesn't affect the total. Thank you, Your Honors. I'm sorry. I'm not connecting on the question. My apologies for not doing that. Your Honor, the question about whether there's two causes of action here, one under Section 2 and another for failure to repurchase, the fact that we did not assert a claim under Section 2 is covered by the contract. Paragraph 14 of the contract says, the failure of either party to exercise any right given to it under this agreement or to insist on strict compliance of any obligation under this agreement shall not constitute a waiver of any right including the right to insist on strict compliance in the future. That answers the question about whether we needed to assert a claim under Section 2. Secondly, as I said before, once we invoke Section 11, we have the obligation to give them the right to cure. And until that is given, Missouri law says very clearly, and the case is cited on page 9 of our reply brief, the yellow brief, until the buyer of nonconforming loans demands repurchase by the seller, the buyer could not have sued on that independent breach before that time. That's actually an Arkansas case, but there are two, three Missouri cases. The suit cannot be filed prior to expiration of the contractual time for fixing defects. Their version of the statute of limitations, besides being extremely factual and difficult to parse, would result in some cases, perhaps in many cases, in the statute having run before the defect is even discovered. That's one of the reasons why we have always focused on Section 11, giving them a chance, once we discover, giving them a chance to cure it. And if they don't go to repurchase it, they owe us a contractual remedy that they had agreed to. Although I did hear counsel scale back. I don't know if it's scale back or a different understanding. But I heard counsel say, no, it's when you have notice, when you have notice that the loans are defective. At that point, that triggers the accrual of the statute of limitations. So presumably there would have been some notice that would have triggered that. That might have triggered something if you'd gone under Section 2, but not under Section 11. Every Missouri judge that has looked at this case, and there have been a dozen of them roughly in the Eastern District, have concluded that the correspondent accepted the risk that it would be contractually obligated to repurchase defective loans despite foreclosure. And in fact, the contract specifically contemplates that the loan might not be owned by CMI at the time that it seeks damages. And because, in addition, the formula covers foreclosure expenses, it's very clear that there's no surprise here. It might have been the type of business being conducted that some of these loans might have been foreclosed. And they agreed that under those circumstances, our remedy would be the repurchase price, whether there's a technical repurchase or not. And with that, I think I'll sit down. Thank you. Thank you, counsel. Complex case. Thoroughly brief and well argued. We'll take it under advisement.